Estate of Salvatore Santuccio, Deceased, Josephine Santuccio, Administratrix, and Josephine Santuccio v. Commissioner.
Estate of Salvatore Santuccio v. Commissioner
Docket No. 23494.
United States Tax Court
1952 Tax Ct. Memo LEXIS 260; 11 T.C.M. (CCH) 343; T.C.M. (RIA) 52102; April 11, 1952
*260 Solomon Sandler, Esq., for the petitioners. William C. W. Haynes, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion In these proceedings the respondent determined a deficiency in the income tax of the decedent and Josephine Santuccio for the calendar year 1943 in the amount of $2,378.16 to which he added a 50 per cent penalty in the amount of $1,189.08. The petitioners allege error in the respondent's determination of the amount of income realized by the decedent from a partnership and in his addition of a fraud penalty. The pleadings also raised an issue as to the amount of capital gain realized by the decedent on the sale of a boat, but that was conceded at the hearing by counsel for the petitioners. The notice of deficiency was sent to, and the petition herein was filed by, Salvatore Santuccio and Josephine Santuccio, husband and wife. Upon suggestion of the death of Salvatore Santuccio, his estate was substituted as the petitioner in his stead. Findings of Fact In the year 1943 the decedent and Josephine Santuccio were husband and wife. During the period January 1 to sometime in October of that year, they resided at Gloucester, *261 Massachusetts. In the latter part of 1943, they moved to Monterey, California. For the year 1943, they filed a joint income tax return with the Collector of Internal Revenue at San Francisco, California. Thereafter, they returned to Gloucester, Massachusetts, where they were living at the time the notice of deficiency was sent to them. The joint return for the year 1943 reported gross income from the schooner "Ethel S. Huff" in the amount of $2,448.53 and from the boat "Vivian A" in the amount of $1,818.67, a total from these sources of $4,267.20. It showed net income in the amount of $4,280.42. The decedent in 1943, and prior thereto, was a fisherman, and fished on various fishing boats. In 1942, the decedent and Nofie Demetrie purchased the fishing vessel "Ethel S. Huff" at a total cost of $8,000, of which the decedent contributed $4,067.50. Of the sum contributed by the decedent, he borrowed $1,000 from his mother-in-law. Part of the purchase price was obtained by the purchasers on loan from a bank for which they gave a mortgage on the vessel. The two men owned and operated the boat as equal partners during 1943 until October 12th of that year when the decedent sold his interest *262 to Demetrie for $5,000. The Ethel S. Huff was a fishing vessel known as a whiting dragger, and was operated in the fishing trade out of Gloucester by the partners during the period of the partnership, January 1 to October 12, 1943. The decedent was captain of the vessel and his partner was the engineer. The captain determined when fishing trips were to be made, where the fishing was to be done, and where the fish should be sold. The crew of the vessel generally consisted of five men, including the owners. It was customary for the vessel to leave on fishing trips around two o'clock in the morning and to return at nine or ten o'clock at night. After two or three days' fishing, the catch was taken to a dealer in fish who would give a check to one of the partners for the purchase price of the fish. During the existence of the partnership in 1943, it made 54 sales of fish. The gross sales price of the fish in that period amounted to $30,868.26. When a sale of fish was made, the check in payment was cashed by one of the partners, and from the proceeds there was first deducted the so-called joint expenses of the vessel, which expenses consisted of the cost of food, ice, and oil. The balance *263 then was divided into 8 1/2 shares, which represented one share for each member of the crew, including the two partners, and 3 1/2 shares for the vessel. The share of each member of the crew was paid to him; the vessel's share was deposited in a checking account in the name of the vessel and used to pay running expenses and to pay off the mortgage on the vessel. The joint expenses of the vessel for the period of the partnership's existence in 1943 was $2,100. During 1943, the crew of the Ethel S. Huff objected to having income taxes withheld from their wages. In order to meet the objections of the crew, income taxes and social security taxes were withheld by the partners on only a part of the sums paid to members of the crew. A book kept by the partners in which they entered payments to the crew, and on which withholding returns were based, did not contain the full amount of such payments. A book kept by the partners purporting to show sales of fish did not list all of the sales. All checks on the bank checking account that was in the name of the vessel were signed by both partners. Both partners knew that the boat was making more money than was shown on their books. The decedent's *264 distributive share of partnership income from the operations of the Ethel S. Huff from January 1 to October 12, 1943, was $6,727.63, computed as follows: Gross Sales (Jan. 1, 1943 to Oct. 12,
1943)
$30,868.26
Less: Joint Expenses
$2,100.00
Wages to Crew
6,434.76
Wages to Owners as
Crew
4,174.28
12,709.04
Gross Profit
$18,159.22
Less: Deductions
Wharfage
$ 84.00
Overhaul and Repairs
1,000.00
Carpenter Work
186.00
Taxes
64.57
Fishing Gear
3,000.00
Depreciation
369.39
4,703.96
Partnership Net Income
$13,455.26
Decedent's One-half
$ 6,727.63 Part of the deficiency is due to fraud with intent to evade tax. Opinion ARUNDELL, Judge: We have the questions of whether the decedent understated his income and his income tax and, if so, whether the understatement was due to fraud with intent to evade tax. It appears clearly from the evidence that the fishing partnership of which the decedent was a member in 1943 failed to record a substantial number of sales of boatloads of fish. This was discovered by Bureau of Internal Revenue representatives checking with purchasers of the fish. Based on such check, the respondent has determined *265 the correct amount of gross sales and such amount has been agreed to by counsel for the petitioners. The decedent's partner testified that both partners knew the boat was making more money than was shown by their books. It is also clear that the partners did not record all of the sums paid to the crew members. This was because of the objections of the crew to having income tax withheld on the full amounts paid to them as their shares of the sales of fish. They threatened to refuse to fish if so much tax was withheld. The partners resorted to the expediency of recording only parts of the sums paid to the crew, and of withholding and paying tax only on the amounts so recorded. The amounts by which the crew payments were understated did not equal the amounts of understatement of sales by the partnership. On brief, the respondent has recomputed the amounts paid to the crew members and shown it as $6,434.76, as set forth in the findings of fact. The amount so recomputed is greater than the amount reported by the partnership. The petitioners have not shown that any greater amount is proper and we accept the respondent's figure. The gross sales, joint expenses, and deductions shown in the *266 findings have been agreed to by the petitioners' counsel. The amount of $4,174.28 shown as wages to owners as crew consists of the sums of $2,448.53 reported by the decedent as his wages, and $1,725.75 reported by decedent's partner as his wages from the "Ethel S. Huff" during the period of the partnership. The respondent accepts as correct the sum of $2,448.53 as representing the amount received by the decedent as wages. The result of the computation is that the decedent's distributive share of partnership income, in addition to the amount received as wages, was $6,727.63. As none of this was reported on the return filed by the decedent and his wife, there is a deficiency the amount of which will be determined on recomputation. The respondent must be sustained in his assertion of the fraud penalty. The argument of the petitioners is that the decedent reported all that he actually received, and that his failure to report any more than that cannot be the basis for a fraud penalty. The argument does not square with the facts. While it appears that the decedent received only $2,448.53 as wages as a member of the crew, that sum represented only one share of the amount of sales less expenses. *267 Three and one-half additional shares went to the decedent and his partner. Some part of the three and one-half shares was paid over to the bank in satisfaction of the mortgage on the vessel, and it may be that the decedent did not regard such sum as taxable income even though as a matter of law it was income to him. Even so, that indebtedness would not absorb all of the decedent's share of the unreported partnership income. It is agreed that the decedent contributed $4,067.50 towards the purchase of the boat. Of that sum, he borrowed $1,000 from his mother-in-law. Consequently, his indebtedness to the bank could not have exceeded $3,067.50 and even if all of that was paid out of his share of the partnership earnings, well over $3,000 remained to him. The omission of income seems to have had its genesis in the threatened rebellion of crew members against the withholding of income tax on the full amount of their wages. This situation led to the failure to record some wage payments and, in turn, the failure to record some sales. Boat operators, like the decedent and his partner, were faced with a dilemma. They could not obtain crews if they withheld the full tax. They resorted to subterfuge. *268 This seems to us to point up the fact of the intent to evade tax. In their failure to record sales the partners acted knowingly. They knew that they should have withheld more tax on the wages of the crew and, while that would not necessarily affect their tax, it was a link, deliberately forged, in the chain of facts which led to the understatement of their income. It is accordingly held that the respondent has met his burden of establishing that part of the deficiency was due to fraud with intent to evade tax. Decision will be entered under Rule 50.